Crew, J.
It is a part of the common law duty of railroad companies to afford to all shippers, without favoritism or discrimination, equal opportunities and facilities for receiving and shipping freights of the same kind and class. In this state such duty is declared and specifically enjoined by Section 3373-1, Revised Statutes, which provides that: “It shall be the duty of all railroad companies and of all persons operating a railroad, to secure and extend to all persons, companies and corporations, the same and equal opportunities and facilities for receiving and shipping freights of all kinds, of the same class (and the same and equal opportunities and facilities for receiving and shipping freights of all kinds of the same class), that such railroad company or the person operating such railroad, extends to, has used or enjoys, of and concerning freights owned by such railroad company, or the person operating such road or any of the officers or stockholders therein, or in which it, they or either of them have any interest and any railroad company or person operating any railroad failing to comply with or observe the provisions or requirements of this section, shall *143 be liable in a civil action to the party injured for the damages sustained, but for any violation of this section the recovery in any such action shall not be less than five hundred dollars.” It is the claim of counsel for plaintiff in error, that a proper interpretation of this statute will not permit the recovery of the penalty therein provided, except only in cases where the discrimination alleged and proved, is a refusal on the part of the railroad company to furnish to the shipper equal opportunities and facilities for the shipment of freight, that such railroad itself uses or enjoys of and concerning freights owned by said company, or the officers or stockholders therein, or in which it, they, or either of them have an interest. That it was not the legislative intent that this statute should be thus limited in its operation and effect, and that the legislature did not in fact so contemplate or enact, becomes apparent we think from a brief consideration of the course and history of this particular enactment. H. B. No. 658, (Section 2 of which is the law now under consideration), as originally introduced in the House of Representatives, was amended in the Senate by striking out all of said original Section 2 after the word and figure .“Section 2” and inserting in lieu thereof what is now Section 3373-1, Revised Statutes, as above quoted. Senate Journal, 1891, pp. 742, 743. The Senate amendment was concurred in by the House and the bill as so amended was passed and became a law on April 29, 1891. 88 O. L., 429. In the bill as passed, no parenthetical marks, such as are now found in the statute *144 as published, were used or inserted, but .in said statute in the form in which it became a law, a comma was inserted and is found after the word “class,” in the first paragraph of said section. Thus indicating that the language now found in parenthesis, is not a mere repetition by inadvertence of the language which immediately precedes it, but that this language was advisedly and intentionally so repeated and used, by way of appropriately describing and defining a further and particular preference or discrimination thereby intended to be prohibited and forbidden. In other words, it was we think, the evident design and purpose of the legislature by this statute to enact and provide, — i. That it shall be the duty of all railroad companies to secure and extend to all persons, companies and corporations, the same and equal opportunities and facilities for receiving and shipping freights of all kinds of the same class. 2. That it shall be the duty of all railroad companies to secure and extend to all persons, companies and corporations the same and equal opportunities and facilities for receiving and shipping freights of all kinds of the same class that such railroad company extends to, has, uses, or enjoys, of and concerning freights owned by such railroad company, or any of the officers or stockholders therein, or in which it, they, or either of them have any interest. The first provision doubtless, was intended to be and is, merely declaratory of the common law duty and obligation of railroad companies as common carriers, while the obvious purpose and effect of the second provi *145 sion, was and is, to declare unlawful, and to specifically prohibit by direct and positive enactment, the particular kind of preference or discrimination therein expressly pointed out and forbidden. The penalty clause of the statute, applies alike to both of these provisions, and is in terms as follows: “Any railroad company or person operating any railroad failing to comply with or observe the provisions or requirements of this section shall be liable in a civil action to the party injured for the damage sustained, but for any violation of this section the recovery in any such action shall be not less than five hundred dollars.” Whether or not in a particular case equal facilities have been refused and a discrimination made, as between shippers, is a question of fact to be determined from the evidence. Inasmuch therefore, as it affirmatively appears from the record in the present case, that there was sufficient evidence to warrant the finding of unlawful discrimination on the part of the railway company against the complainant John Wren, the latter was entitled, by force of the statute, to a verdict' and judgment in his favor for at least five hundred dollars. But with the qualification that the amount recovered shall not be less than five hundred dollars, a party suing for the violation of any of the provisions of this statute is only entitled to recover by way of damages, such sum as will compensate him for the loss or injury he has actually sustained. And in such action if, under the averments of his petition the plaintiff is only entitled to recover general damages, there being no sufficient allega *146 tion therein of any special damages, the true rule and measure of such general damages is the difference between the market value of the goods that would have been transported in the cars the plaintiff should have received, at the point to which they were to have been carried at the time when they would have reached their destination, and their market value at the same time at the place from which they were to have been carried, less the cost of transportation between the two points. In the present case a verdict was returned by the jury in favor of the plaintiff and against the railway company for the sum of two thousand dollars; a sum, which upon the undisputed facts is shown to be so grossly' in excess of the damages actually sustained by plaintiff, as to compel the conclusion either, that such verdict was given and returned by the jury under the influence of passion or prejudice, or under the mistaken belief that they were permitted and had full right, to arbitrarily fix and determine the amount of the damages they would assess and allow, no instruction whatever having been given them by the court, as to how, or by what rule, they were to ascertain and measure the amount of such compensation, in the event they should find for the plaintiff. The entire and only instruction given by the court to the jury on the question of the amount of compensation proper to be allowed by them, was as follows: “If you find for plaintiff your verdict will be for such sum as will compensate the plaintiff for damage which he received by reason of defendant discriminating against the *147 plaintiff as in plaintiff’s petition alleged. But if you find for plaintiff your verdict will be for not less than five hundred dollars.” How such damages were to be ascertained, or by what rule they were to be measured and determined the jury was not told, although counsel for the railway company specially requested an instruction upon this point. While the particular instruction asked by counsel in this behalf was properly refused as not containing an accurate statement of the rule or measure of damages applicable in this case, nevertheless, the request as made challenged the court’s attention to the necessity of, and counsel’s desire for, some positive and pertinent instruction on this very material question, and the total omission and failure of the court to advise and instruct the jury as to the law applicable to such question was in this case, under the circumstances, both erroneous and prejudicial. The railway company also requested the trial judge to give to the jury the following instruction:
“The plaintiff claims to have given defendant an order on or about the 26th day of September, 1905, for two cars for shipment of plaintiff’s hay over defendant’s road to C. & O. and N. & W. points and that the defendant refused to deliver said cars, in consequence of which plaintiff claims damage.
“The court instructs you that before plaintiff can recover in this action, he must satisfy you by a preponderance of the evidence,
“First — That such order was given to defendant.
*148 “Second — That defendant had the cars of the kind ordered and facilities for furnishing the same during the period of- which plaintiff complains, and
“Third- — That defendant discriminated against the plaintiff in favor of other shippers in the delivery of cars for the transportation of hay and straw.”
This instruction, which was refused, should we think have been given as asked, and the refusal of the court to submit it to the jury was error. Other alleged errors are assigned and have ■ been considered, but we find in the record no prejudicial error except as hereinbefore stated. The judgment of the circuit court affirming the judgment of the court of common pleas will be reversed, and the cause will be remanded to the court of common pleas of Wyandot county with directions to set aside the verdict rendered herein and grant a new trial, unless a remittur be entered by John Wren of the amount of said verdict in excess of five hundred dollars.

Judgment reversed.

Shauck, C. J., Price, Summers, Spear and Davis, JJ., concur.